5 W 27
f 24 SC 316

## ⸮ Slaymaker *against* St John.

A party, upon request made to the court, is entitled to a clear and distinct instruc-tion on the rule of law applicable to his case, and it is error in the court either to omit to give it, or to give it in so imperfect a manner that the jury may be misled, or left uninformed of the law.

The statute of frauds and perjuries in Pennsylvania does not prevent a resulting trust in lands, from being proved by parol.

ERROR to the Court of Common Pleas of *Lancaster* county.

Samuel C. Slaymaker for the use of Abraham Cassel, against The Marietta and Susquehanna Trading Company, with notice to the terre-tenants who were the widow and heirs at law of Stephen St John.

Judgment was entered on the 26th of January 1824, at the suit of the plaintiff, against the Marietta and Susquehanna Trading Company, (a bank in Lancaster county,) and the present is a *scire facias* to revive the judgment, with notice to the terre-tenants and representatives of Stephen St John, who are in possession of real estate which the plaintiff alleges to be the property of the bank. The defendants plead, that the property is not subject to the plaintiff's claim, nor liable to his execution.

The material facts appear to be as follows: On the 25th of August 1819, Steinman and Cotterell obtained a judgment against the bank. A *fieri facias* was issued in November 1819, by which the estate in question was levied on and condemned, and sold by the sheriff, and a deed made 17th of March 1823, to Stephen St John, the purchaser. The plaintiff alleges, that St John purchased for the bank, and received the deed as their trustee, and, therefore, the property is subject to the lien of his judgment. It would seem that the premises, prior to the sheriff's sale, had belonged to the bank, but the legal title was in W. Childs, who, with four others, Grosh, Gish, Mishey and Patterson, had been appointed by the court, on the 19th of March 1822, trustees for the bank, which had closed its operations. Childs was the acting trustee. It was proved by him, and no evidence was adduced to impeach his statement, that he attended the sheriff's sale under the idea that the property might be sacrificed. Patterson and Grosh also attended. Childs went to St John, and requested him to attend the sale, and bid the property off for the bank, if it did not go to its value. St John attended the sale, and the property was struck off to him for 115 dollars. Childs then handed him the money, which he advanced out of his own pocket, and St John paid it over to the sheriff. Childs, soon after, charged the money to the bank. It further appears that at the time of the sheriff's sale, Childs set up an advertise-

[Slaymaker v. St. John.]

ment, stating that the property was his, and whoever bought it as the property of the bank would buy at his peril. In the fall of 1823, the trustees entered into articles of agreement to sell the property to George Beckel for 3000 dollars, to be paid in notes of the bank when he obtained possession. In February 1824, the trustees and Childs executed deeds to Beckel, but he never paid any money, nor obtained possession; for St John, when called on by Childs to convey to Beckel, refused, claimed the property as his own, and entered into possession. It was alleged by the plaintiff, that the contract with Beckel was on condition that he should receive possession, and possession not having been delivered, the contract with him was at an end.

The principles of law relied upon by the plaintiff are contained in the following points upon which the court were requested to charge the jury.

1. That the act of frauds and perjuries in Pennsylvania, does not prevent a declaration of trust from being made by parol; and, therefore, if the jury believe the testimony of William Childs, Esq., that he employed Stephen St John, to buy the property in for the bank, and gave him the money wherewith he paid for it—that the property, in that case, is the bank's, and not Stephen St John's, or his heirs.

2. That the acknowledgement and execution of the deed, by the sheriff, to Stephen St John, does not alter the case, he still holding it as a trustee for the bank—and the property, therefore, liable to be levied on and sold by the creditors of the bank, for the payment of their debts.

3. That an agent who has acted, cannot call in question the power of his principal, no more than tenant can the right of his landlord; and if Stephen St John was a mere agent and trustee, and had no right to the property—so neither has his widow or children any right to it, since his death—and that the plaintiff has a right to have lien revived against the said property.

4. That the defendants, by their deed, are estopped from denying the right and title of the Marietta Bank to this property.

And the defendants requested the court to charge upon these points.

1. The party who alleges a trust by implication of law, must prove it by clear and satisfactory evidence: and parol evidence, tending to establish a trust of this nature, should be received by the jury with great caution; and if the evidence in this case does not clearly prove that Stephen St John intended, at the sale, to purchase in trust for the bank, the verdict must be for the defendant.

2. As Squire Childs swears that he had no authority from the board of trustees of the banking company, previous to the sale by the sheriff, to purchase, or employ any one else to purchase the property in trust for the bank, that he never told St John that he had such authority, and that the board of trustees never sanctioned the

[Slaymaker v. St John.]

purchase, subsequent to the sale, and does not even swear that he has ever received from the company, or from any other person, a single dollar of the purchase money, the facts detailed by him, being wanting in these essential particulars, are not sufficient to raise a trust in favour of the bank, in the property purchased at the sale by St John.

3. As the only witness produced by the plaintiff does not pretend that St John ever confessed that he bought the property in trust for the bank, the mere circumstance of his having been previously requested to do so, and of Squire Childs's afterwards advancing the money out of his own funds to pay for it, is not sufficient to raise a trust in favour of the bank; and his, Childs's, charging the amount to the bank subsequent to the sale, can make no difference in this principle.

4. If the testimony of Childs be true, that he gave notice at the sheriff's sale, that the house belonged to him, and not to the bank, and he thereby deterred others from bidding, his afterwards attempting to purchase would be fraudulent: and his subsequent transfer of his claim to the bank would be void, and could not affect the rights of a legal owner of the property.

5. Equity, which is part of the law of Pennsylvania, will not create a resulting trust in favour of a person, who, by law, is incapable of holding; and as the trustees of the Marietta Company had no authority to purchase real estate under any circumstances, and even if they had, could only do so in the cases coming within the provisions of the charter, no trust can be raised in their favour in the case before the court.

6. At the time this judgment was obtained, the whole equitable interest of the Marietta and Susquehanna Trading Company, (if any such had existed,) appears by the express declaration of the only witness examined on behalf of the plaintiff, to have been transferred to George Beckel, and consequently no judgment obtained against them subsequent to such transfer could bind that interest, or be levied on it.

The material part of the charge of the court, in answer to the points put by the counsel of the parties, is fully stated in the opinion of the court.

*Jenkins,* for plaintiff in error, contended that the plaintiff was entitled to a distinct answer, that a resulting trust may be created by parol, and cited Foote *v.* Colvin, 3 *Johns.* 216; 1 *Johns. Cas.* 153.

*Franklin,* for defendant in error, contended that a resulting trust should not depend upon doubtful parol evidence, and that the charge of the court on that point was as strongly in favour of the plaintiff as the proof allowed, and cited Gascoings *v.* Tering, 1 *Vern.* 366; 2 *Atk.* 71, 150; *Prec. in Chan.* 84, 163; Boyd *v.* M'Lean, 1;

[Slaymaker v. St John.]

*Johns. Chan.* 590; Lench *v.* Lench, 10 *Ves. Jun.*; Peebles *v.* Reading, 8 *Serg. & Rawle* 484.

The opinion of the court was delivered by

SERGEANT, J.—If the facts be as it would appear by the evidence they are, that a majority of the trustees to whom the care of the concerns of the bank was committed, attended the sale of a portion of the property of the bank, and, in order to prevent its being disposed of at an undervalue, Childs, the acting trustee, procured St John to bid for them, and furnished him with money for the purpose, and St John undertook the trust, purchased the property and paid for it with that money, and took the deed in his own name, he certainly became thereby a trustee for the bank, the equitable title remained in them, and was bound by the plaintiff's judgment. That such trust in real estate may be established by parol evidence, was settled in German's Lessee *v.* Gabbald, 3 *Binn.* 302, and is confirmed by subsequent decisions; and proof of an undertaking and employment to execute a trust, makes quite as strong a case as that of any confession or declaration. On the evidence of Mr Childs, the money must be deemed the money of the bank, for he says that he, as acting trustee, employed St John, and gave him the money, and though at the time he advanced the money out of his own pocket, he did it for the bank, and soon after charged it to them; so that, in effect, it was the bank's money, loaned to them by Childs. The act of Childs, in relation to the purchase, was afterwards ratified by all who had a right to control it. The trustees claimed the property, and articled to sell it to Beckel; Childs concurred in that sale, and swears that he represented the bank in the purchase. His advertisement was an act in his individual capacity, and might have been a good reason for objecting to a confirmation of the sheriff's sale, on the part of the plaintiff, or any other person that was injured by it. If the sale had been set aside, the property would have remained in the bank; but no objection was made to it; St John affirmed it, and received a deed under it, in pursuance of his purchase as agent and trustee of the bank. Holding the deed as such, he could not controvert their title, but was bound to surrender up the property when called on by the trustees. If so, the property was bound by the judgment, and ought to go towards payment of the debts of the bank, and not to St John or his representatives, who never paid a dollar for it.

Most of the positions laid down by the court below seem to be in accordance with these principles, but in some of their material features, they are so mingled up with extraneous matter, as to be exceedingly vague and obscure, and to the first of the plaintiff's propositions, which embodies the merits of his case, the charge of the court contains no distinct answer. The plaintiff's first proposition was, "that the act of frauds and perjuries in Pennsylvania does not prevent a declaration of trust from being made by parol, and there-

fore if the jury believe the testimony of Childs, that he employed St John to buy the property in for the bank, and gave him the money wherewith he paid for it, the property is the bank's, and not St John's." The part of the charge that relates to this proposition, seems to be the following:

" It appears from this summary, that Mr Childs declares he had no authority from the board of trustees of the banking company, previous to the sale by the sheriff, to purchase, or employ any one else to purchase, the property in trust for the bank; that he never told St John that he had such authority, and that the board of trustees never sanctioned the purchase, subsequent to the sale; that he nowhere states he has ever received from the company, or from any other person, any part of the purchase money. It is contended, on behalf of the defendants, that the facts detailed by Mr Childs, being deficient in these essential particulars, are not sufficient to raise a trust in favour of the bank, in the property purchased at the sale by St John."

" You will recollect that the claim of its being in trust, is not made in favour of Mr Childs, but in favour of the bank; and not considering Mr Childs as trustee, it would appear to me that, under the circumstances just mentioned, connected with the fact that there is no proof that St John ever confessed that he bought the property in trust for the bank, the mere circumstance of his having been previously requested to do so, and of Mr Childs afterwards advancing the money out of his own pocket to pay for it, whatever equity it might have raised in favour of Mr Childs, if he had made a claim on his own behalf, subsequently to the sale, can make no difference in this principle. And as to any interest Mr Childs might have claimed, it would appear to me, that if he gave notice at the sheriff's sale that the house belonged to him, and not to the bank, and he thereby deterred others from bidding, his afterwards attempting to purchase would be fraudulent; the subsequent transfer of his claim to the bank would be void, and could not affect the right of the legal owner of the property."

" But these sentiments and opinions have relation to Mr Childs acting as an individual, and not as an agent of the bank. The case will wear a different aspect, if the facts stated by Mr Childs are established to your entire satisfaction, and you are convinced that he acted altogether as a trustee. It is not enough that he was a trustee, but he must have acted as a trustee, and advanced the money as a trustee, and in that case, it would be considered as the money of the bank, whether regarded in the light of a loan or a gift, and the right of the bank would depend, not on any transfer to them by Mr Childs, but on the resulting trust in their favour."

But was there a resulting trust in their favour, if the facts stated are true?. This question was a material one to the plaintiff. Instead of answering it expressly in the affirmative, as they ought to have done, the court say the right of the bank depends on the re-

sulting trust, and leave the jury to discover whether there was such a resulting trust binding in law, if they believed all the facts stated by Mr Childs.    It is very possible the court meant to say there was such a resulting trust, but the plaintiff was entitled to a clear and distinct instruction on the rule of law applicable to his case, and it was error in the court either to omit to give it, or to do it in so imperfect a manner that the jury might be misled, or left uninformed on the law.

The plaintiff excepted to the evidence of the proceeding by St John, under the landlord and tenant act, against David Cassel and another, to recover from them the possession of the premises, after he had obtained his sheriff's deed.    I am unable to perceive what connection this proceeding had with the issue in the present case. It could not affect the right of the bank, as *cestui que trust*, whether St John succeeded in a proceeding against the tenants or not.    If he were a trustee, he continued to be so whether he occupied by tenants or by himself.    Holding the legal title, he was entitled to the possession against all but the bank, and they were not parties to the proceeding, nor does it appear they had notice of it, or could become parties.    If so, it was *res inter alios acta*, and irrelevant to the case.

Judgment reversed, and a *venire facias de novo* awarded.