# Thomas *v.* Butler, Appellant.

*Husband and wife—Execution—Sale of wife's property—Evidence—Declarations of husband.*

On the trial of a feigned issue framed under a sheriff's interpleader act to try the title to goods levied upon as belonging to a husband, but claimed by his wife, declarations of the husband, made in the absence of the wife and after the levy, to the effect that the goods were his, and that he had made a bill of sale of them to his wife to keep creditors from selling him out, are inadmissible, he being neither a witness nor a party to the issue: Thomas v. Butler, 16 Pa. Superior Ct. 228, distinguished.

In such a case where it appears that the bill of sale to the wife covered personal property on a farm, and the wife testifies that after the bill of sale she conducted the farm, and that her husband did nothing without her permission, it is not error to reject an offer to prove that a store account for purchases of articles for use on the farm was continued in the name of the husband, and that he paid for the same, where there is nothing to show that the articles purchased by the husband, were involved in the case.

*Trial—Instructions—Points—Charge.*

Where a point presented by a party at a trial is in clear conflict with a decision of the Supreme Court, and the court might refuse it, without saying more, it is not prejudicial error for the court to sustain its instructions by reading to the jury a pertinent portion of the opinion of the Supreme Court.

*Husband and wife—Evidence—Declarations of husband—Estoppel.*

The fact that a wife does not deny statements made by her husband in her presence, and adverse to her property rights, will not estop the wife thereafter from asserting title to the property referred to in the statements.

A party, upon request made to the court, is entitled to a clear and distinct instruction on the rule of law applicable to his case, and it is error in the court either to omit to give it, or to give it in so imperfect a manner that the jury may be mislead, or left uninformed of the law. If, however, the court affirms a point which covers the ground, and is as strong a statement of the law as the party is entitled to ask, and this instruction is intended to be the conclusion of the whole matter, and must have been so understood by the jury, the instruction is sufficient, although there may have been inadequacy and indefiniteness in the charge itself on the subject.

*Husband and wife—Feigned issue—Execution—Property of wife—Collateral question.*

On a feigned issue to determine whether property levied upon as the property of a husband, is the property of his wife under a bill of sale from the husband, the question whether the wife is estopped to set up a title under the bill of sale as against others than the defendants, is a collateral question, the determination of which is immaterial to the issue.

Argued Oct. 28, 1903.    Appeal, No. 94, Oct. T., 1901, by

defendants, from judgment of C. P. Centre Co., Nov. T., 1897, No. 239½, on verdict for plaintiff in case of Mary S. Thomas v. Burdine Butler and Thomas Butler. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Feigned issue to determine title to personal property sold as the property of a husband, but claimed by his wife under a bill of sale from her husband, to herself. Before LOVE, P. J.

At the trial defendant made the following offer:

Counsel for defendants offer to prove by Burdine Butler, Dr. Thomas Tobin and other witnesses the declarations of D. R. Thomas, the husband of the plaintiff and the maker of the alleged bill of sale upon which plaintiff relies for title, as follows, to wit: That the said D. R. Thomas subsequent to the date of the alleged bill of sale, and before the levy in this case, stated to Burdine Butler, in Patton township, at Howard, and in other places, that the personal property on the farm belonged to him, D. R. Thomas.

Also that on the day of the execution of the Butler note at Howard, D. R. Thomas stated to Robert Cook, junior, that he, in order to borrow money from said Cook, was the owner of the farm stock and other personal property on the farm of the value of $3,000 and upwards.

Also that said D. R. Thomas in the spring of 1896 stated to John Hoffman and others that he had made a bill of sale to his wife, to keep creditors from selling him out, and that he was loose footed now, and that Mr. Stein, his father-in-law, had never given them anything nor his father either, and that neither he nor his wife had ever received anything from home; also that D. R. Thomas stated, since the bill of sale was executed, to disinterested witnesses, that he had by arrangement put his own money in the clock for Jonas Stein, his father-in-law, to get it to give to the plaintiff, and that there was more than one way to choke a cat without butter.

Also that said D. R. Thomas stated to Dr. Tobin and other witnesses, since the date of said alleged bill of sale, that he, D. R. Thomas, and not his wife, was the owner of the farm stock and other personal property.

Also that he, D. R. Thomas, at the same time, offered to

execute to Dr. Tobin a bill of sale of said personal property
to secure him for money loaned at said time by said Tobin.

To which offer on the part of the defendants counsel for
plaintiff object for the following reasons, to wit:

1. That the declarations of D. R. Thomas made to third
persons in the absence of his wife, who is the party to the issue,
are incompetent to affect her title and are inadmissible, es-
pecially in view of the fact that it had not been shown that
Thomas Butler or Burdine Butler were creditors of said D. R..
Thomas at the time said bill of sale was made, or at the time
alleged declarations to Burdine Butler were made, nor is it
alleged or contended by defendants that the bill of sale was
made for the purpose of defrauding them, or either of them,
out of their claim, which originated on February 18, 1897.

2. Because it has not been shown, nor is it proposed to be
shown, that D. R. Thomas ever borrowed money from Robert
Cook, or that Cook was a creditor of said D. R. Thomas at any
time.

3. Because there is no evidence to show that at the time of
the alleged declarations to John Hoffman, the said John Hoff-
man was a creditor of the said D. R. Thomas, or that he was
indebted to anyone at that time.

4. Because any declarations of D. R. Thomas—if any were
made—as to putting money in a clock, etc., are irrelevant and
inadmissible to contradict the plaintiff in her testimony as to
the consideration for the bill of sale.

5. Because the alleged declarations to Dr. Tobin by D. R.
Thomas in the absence of his wife, the plaintiff, are inadmissible
and irrelevant to affect her title.

6. Because the offer as a whole is incompetent, irrelevant and
inadmissible.

By the Court: The offer proposes to prove sundry declara-
tions of D. R. Thomas, the husband of the plaintiff in the issue,
made to strangers in her absence, in public places, and covering
uncertain periods of time, which are against or adverse to the
plaintiff's claim of title to the property in question. D. R.
Thomas has not been called as a witness in the trial by the
plaintiff. The evidence offered cannot tend to contradict
him.

When the cause was tried before, D. R. Thomas was

called and testified on behalf of his wife's claim. We then excluded an offer then made of a similar character. The Superior Court held it to be error, as it was proper for the purpose of contradicting D. R. Thomas. The Superior Court based its ruling on the case of Miller v. Baker, 160 Pa. 172. That case was very different from the present one. There the husband had bought real estate with money alleged to belong to his wife, and took the title in his own name. When he wanted to borrow money he represented the property was his. The lender of the money had the title examined and the record of title showed it was his. The money was loaned to the husband, and not paid, judgment was obtained against him and the real estate sold as his. At the sale notice was given by the wife that she owned the property.

The purchaser at sheriff's sale brought an action of ejectment against the husband alone. The wife was no party to the suit. The husband sought to defend his possession by setting up his wife's claim or resulting trust in her favor. Then the Superior Court say on page 179, " We think that the learned court below erred in rejecting the appellant's offer to prove acts and declarations of the appellee inconsistent with his testimony. He was the sole defendant and an important witness in the cause." The principal reason for the ruling was that he was the sole defendant and the principal witness in the cause.

In this case the wife is the sole plaintiff and the defendant knew of the plaintiff's claim to the property in question a year and a half before the loan was made. If he did it on the strength of the property, was it not rather his duty to inquire of the plaintiff, before loaning the money to the husband, as to the character of her claim or title? In the case of Miller v. Baker, supra, the record evidence of title was in the husband, and the claim of the wife afterward set up in the nature of a secret trust. We do not therefore think the case of Miller v. Baker disturbs the provisions of the act of May 30, 1887, sec. 4, nor the principle so clearly laid down thereunder, as stated by the Supreme Court in the cases of Burrell Twp. v. Uncapher, 117 Pa. 353, Martin v. Rutt, 127 Pa. 380, Bell v. Throop, 140 Pa. 641, Evans v. Evans, 155 Pa. 572, and Leedom v. Leedom, 160 Pa. 273.

Under the foregoing authorities we deem it our duty to sustain the objections and exclude the offer.

To which ruling of the court the defendants except and at their request an exception is noted and bill sealed. [1]

Defendants propose to prove by J. W. Baisor that he was engaged in the mercantile business, in the vicinity of where Mr. and Mrs. Thomas lived, during the years 1894, 1895, 1896 and 1897, and that they were customers at his stores ; that there was no change in the account during all those years, but the account was kept in the name of D. R. Thomas ; that purchases were made by Mr. and Mrs. Thomas and their family, and that after August, 1895, there was no change in the account; that Mrs. Thomas did not pay for the purchases made for the family and for the use of the farm from August, 1895, to 1897, but the account was settled for by Mr. Thomas.

This for the purpose of showing how they conducted their business, and also for the purpose of contradicting Mrs. Thomas, who stated that she did all the business after August, 1895, and would not permit her husband to do any business at all after that date.

Objected to by counsel for plaintiff for the following reasons :

1. Because the testimony would not, if true, in any sense affect the validity of the title of the plaintiff to the personal property in dispute.

2. Because the account, if such an account was kept, and the books of original entry would be the best and the primary evidence.

3. Because the testimony is irrelevant, incompetent and in-admissible, and would not, if admitted, contradict Mrs. Thomas in any particular.

The objections are sustained and the evidence excluded, to which the defendants except and at their request an exception is noted and bill sealed. [2]

Defendants offer to prove by Dr. Thomas Tobin, a witness to be called in their behalf, that D. R. Thomas, in August, 1895, or about that time, borrowed money from said Tobin, and stated that he wanted to use the money to pay some judgments in favor of the Behrers, which were then in the sheriff's hands ; that he did not want to be sold out, and that the said Tobin loaned said Thomas $150 for that purpose.

310          THOMAS *v.* BUTLER, Appellant.

Statement of Facts—Charge of the Court. [24 Pa. Superior Ct.

Counsel for plaintiff object to defendants' offer for the following reasons :

1. Because the declarations of D. R. Thomas in the absence of his wife, the plaintiff in this suit, are incompetent and inadmissible to affect her title.

2. Because the offer does not propose to show that if D. R. Thomas did make the declarations alleged, he used the money to pay the Behrer judgments, or any other part thereof, and it is therefore irrelevant.

3. Because the offer is generally incompetent and inadmissible.

The Court : For the reasons stated by the court in rejecting the former offer to prove the declarations of D. R. Thomas, by this and other witnesses, the objections are sustained and the offer excluded, to which the defendants except and at their request an exception is noted and bill sealed. [3]

The court charged in part as follows :

[In the case of Paul v. Kunz, 188 Pa. 504, the Supreme Court, in speaking on the question of estoppel of a married woman, says : " There is but one specification of error in this case, and it raises the question as to whether a married woman is estopped by her silence when in her presence her husband makes a general declaration that he owed nobody, she claiming that at that time he was indebted to her.    It must be borne in mind that the declaration was not made to one from whom the husband was about to buy goods, and it was the fact, as appears from the counter statement, that the debt of the plaintiff was not contracted until more than a year after the declaration.    In such circumstances much doubt would arise as to the application of the doctrine of estoppel, even as to persons sui juris."

That is, that the declarations in that case were made about a year before any credit was given to the husband, and that the wife was not estopped because she kept silent when declarations were made in her presence adverse to her interest.] [4]

[Now, gentlemen of the jury, you will take all this testimony into consideration.    You have the testimony of Burdine Butler on the one side in relation to declarations made by Mr. Thomas in the presence of his wife and by Mrs. Thomas her-

self. On the other hand, you have the testimony of Mrs. Thomas denying that any such declarations were ever made by her or in her presence.

You have also the testimony in relation to certain declarations alleged to have been made in the presence of the wife when Peter Moyer was there once in 1896. You are to determine from all this evidence whether the declarations alleged to have been made by Mary S. Thomas, the wife of D. R. Thomas and plaintiff in this case, were really made or not. If you find from the weight of the evidence that such declarations were made to Burdine Butler, or in his presence, and that a year and a half afterwards he loaned money or went security on the strength of such declarations, that would, perhaps, under the language of the Superior Court in this case, act as an estoppel to her setting up the claim that the title to this personal property was in her.

I have read you from a decision of the Supreme Court that even declarations made in the presence of the wife, a year before credit was extended to the husband, would hardly estop a person who was sui juris and would not estop the wife who simply remained silent.

Now, what declarations did she make ? Were they of such a character that Burdine Butler acted upon them to his injury a year and a half afterwards ?] [5]

Defendants presented these points :

2. That if the jury find that such representations were made to third parties by plaintiff and her husband jointly, to the effect that the bill of sale was of no account, and thereby obtained credit for the husband from said third parties, that in such case the bill of sale would be void as to such third parties. *Answer :* As an abstract proposition of law this may be pretty nearly correct, but it has no application to this case. [6]

3. That if the jury find that the plaintiff acquiesced in statements made by her husband in her presence, or at least failed to deny them, which statements would lead third parties, and more particularly the defendants, to extend credit to the husband as the owner of personal property that then she, the plaintiff, would be estopped from setting up title to the personal property, concerning which the statements were made, as against defendants who were induced to become creditors

of the husband on the strength of such statements. *Answer :* This point is refused as stated. [7]

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions ; (4–7) above instructions, quoting them.

*Ellis L. Orvis,* for appellants, cited : Deakers v. Temple, 41 Pa. 234 ; Souder v. Schechterly, 91 Pa. 83.

*Wilbur F. Reeder,* with him *J. Calvin Meyer,* for appellee, cited : Martin v. Rutt, 127 Pa. 380 ; Evans v. Evans, 155 Pa. 572 ; Leedom v. Leedom, 160 Pa. 273 ; Bell v. Throop et al., 140 Pa. 641 ; Burrell Township v. Uncapher, 117 Pa. 353.

OPINION BY RICE, P. J., March 14, 1904 :

When this case was here before (16 Pa. Superior Ct. 288) we held, reversing the court below, (1) that on the trial of a sheriff's interpleader to determine the ownership of chattels levied upon as the property of a husband, but claimed by his wife, the husband, who had testified in his wife's behalf as to the transfer of the title from him to her and as to the consideration therefor, might be required on cross-examination to answer whether he had not made certain declarations to third parties, naming them, at or about the time of the alleged transfer, concerning his indebtedness and the ownership of the chattels, these declarations being inconsistent with, and tending to contradict, the testimony he had given on the trial ; (2) that if the witness had given a negative answer, this would have opened the door to contradiction by the testimony of other witnesses as to such declarations ; (3) that as the court, upon the objection of the party calling him, had refused to permit the witness to be cross-examined as to such declarations and as to the time, place and persons involved therein, the testimony of third persons as to them could not be objected to, because proper ground was not laid for it.  In support of the last proposition we cited Miller v. Baker, 160 Pa. 172.  Our ruling that the declarations of the husband were admissible in evidence under the circumstances stated was expressly put on the ground, and that alone, that the defendants had a right in any legitimate mode to impeach the witness by whose testimony the plaintiff sought to establish

her title, even though that witness was her husband. We entertain no doubt whatever as to the correctness of the ruling. It would have been the law governing this branch of the case, if the same question had arisen on the second trial, and we assume that the presiding judge would have accepted it as binding upon him and would have applied it without detracting in any mode from its force, even though he was not convinced in his own mind that his ruling in the former trial was erroneous. But on the trial now under revision the husband was not a witness, nor was he a party to the action. The question above stated did not arise. If the presiding judge was right in holding that the declarations of the husband made after the transfer to his wife and in her absence were not admissible in evidence, his discussion of the question decided by us on the former appeal, though irrelevant, was not prejudicial error. Was he right in so holding? The bill of sale for many of the articles in question from D. R. Thomas to Mary S. Thomas his wife, was dated in August, 1895. In February, 1897, D. R. Thomas obtained a loan from Thomas Butler for which he gave his judgment note with Burdine Butler as surety. Judgment was entered on the note and a fi. fa. issued thereon returnable to August term, 1897, by virtue of which the property in question was levied upon. Mary S. Thomas claimed it and an issue was framed between her as plaintiff and Thomas Butler and Burdine Butler as defendants to determine the title. On the trial of the issue Burdine Butler testified that in conversations he had with Mary S. Thomas and her husband, after the date of the bill of sale, and before the date of the loan, they said "they were afraid of the costs on the Rishel and Fannan case selling them out;" "that the bill of sale was made to defraud the creditors, to keep the Rishel case from selling them out;" that "she said once it was made up for a fraud to keep the people that were interested in the Rishel case from selling them out for costs;" that they "just said that that bill of sale did not amount to anything, that it was fixed up to keep out the people they owed on the Rishel case, the costs." The defendants then offered to prove the declarations of D. R. Thomas made after the date of the bill of sale and before the levy, but not in the presence of his wife, to the effect that the personal property on the farm belonged to him and not

his wife—this would include the property covered by the bill of sale—also that he had made the bill of sale to his wife to keep creditors from selling him out. The rejection of this offer to show the subsequent declarations of the plaintiff's husband is the subject of the first assignment of error. A similar question is raised by the third assignment.

It is argued by the appellants' counsel that the general rule that the declarations of the grantor, made after he had parted with his title, are not admissible for the purpose of impeaching it, has been so modified that when the bona fides of the transaction is assailed by creditors on the ground of fraud, and some testimony is introduced tending to show collusion, then such subsequent declarations of the grantor are admissible. In support of this prosposition he cites numerous cases, and amongst them Souder v. Schechterly, 91 Pa. 83, wherein the validity of a conveyance of real estate from husband to wife being in question, and some evidence having been given to show that it was collusive and fraudulent as to creditors, the subsequent declarations of the grantor, made in the absence of the grantee, were held admissible. It does not appear, however, from the report of the case that the question whether this modification of the general rule would be affected by the fact of the marital relation of the parties to the transaction was raised or discussed by court or counsel. It is to be noticed also, that at the time of the trial that relation had been dissolved by the death of the husband. But in Martin v. Rutt, 127 Pa. 380, the question appears to have been passed upon. In that case, which was a feigned issue framed under a sheriff's interpleader act to try the title to goods levied upon as belonging to the husband, but claimed by his wife, the declarations of the former adverse to her claim, made in her absence and after the levy, were admitted under objection and exception. This was held to be error, for the reason, amongst others, that they were the declarations of husband against wife. Mr. Justice GREEN, who delivered the opinion of the court, said : " They were inadmissible upon any theory. As declarations, they were secondary only, not being the declarations of the plaintiff herself. As the declarations of an agent, they were incompetent because they were not part of the res gestæ. But they were fatally incompetent for the entirely independent

reason that they were the declarations of a husband offered against his wife." He seems to have had in mind the exception to the general rule relied on by the defense in the present case, for he further said: "Neither the theory of a conspiracy, nor the fact that the husband was the defendant in the execution under which the goods were sold, helps the question in the least degree. It is still the testimony of the husband against the wife, and is interdicted." Some of the other cases cited by the court below in support of the ruling under consideration are distinguishable from the present, but we are of opinion that no error was committed in holding, upon the authority of the case last cited, that the testimony was inadmissible.

The offer embraced in the second assignment might have been relevant, if it appeared that any of the articles purchased from J. W. Baisor and paid for by the husband were involved in this case, but no evidence to that effect has been pointed out to us. The fact, standing by itself, that the store account for purchases of articles for use on the farm was kept in the name of her husband was irrelevant as against her unless she knew how the merchant kept his books, and of this we find no evidence. It is true she had testified that, after the date of the bill of sale, the lease of the farm was assigned to her, that thereafter she paid the rent, managed the farm, received the proceeds and hired and paid the employees, and that her husband did nothing without her permission; but we are not convinced that there is such real or apparent inconsistency between this testimony and the fact that her husband bought and paid for goods for the use of the family and on the farm as made it reversible error to reject the offer to prove that fact for the purpose of contradicting her, and thus impeaching her credibility.

The third point seems to have been framed to meet the contingency of a finding by the jury that the statements to Burdine Butler above referred to were not made by the plaintiff but were made by her husband in her presence and were not denied by her. It is thus seen that the defendants raised a question upon which the decision in Paul v. Kunz, 188 Pa. 504, was a pertinent and binding authority. The court might have contented itself with a bare refusal of the point and a statement in its charge that plaintiff's mere silence would not estop her.

The jury would have been bound to accept that statement of the law upon the question raised by the defendants' point as conclusive upon them, and doubtless would have done so ; but surely it was not prejudicial error for the court to sustain its instructions by reading to them a pertinent portion of the opinion of the Supreme Court in the case referred to.

But a party, upon request made to the court, is entitled to a clear and distinct instruction on the rule of law applicable to his case, and it is error in the court either to omit to give it, or to give it in so imperfect a manner that the jury may be misled or left uninformed of the law : Slaymaker v. St. John, 5 Watts, 27. Applying this principle to the case in hand, the defendants were entitled to have the jury definitely instructed as to the law applicable to the case in the event of their finding that the plaintiff actively joined with her husband in making the representations, that they meant by them that, notwithstanding the sham bill of sale, the whole beneficial ownership of the goods was in the husband, and that Thomas Butler became surety on the faith of the representations. The instructions quoted in the fifth assignment of error did not fully meet that question. After reciting the facts that had been testified to by the defendants' witnesses, and after submitting the determination of them to the jury, the court said, " that would, perhaps, under the language of the Superior Court in this case, act as an estoppel to her setting up a claim that the title to this personal property was in her." It is argued that this ambiguous expression had a tendency to mislead the jury, because it might be taken by them to mean that they were to determine whether the ruling of this court upon this precise question, in this very case, was to be accepted by them as a correct statement of the law. Much force is lent to the argument by the fact that the court in discussing the question of estoppel read to the jury portions of the opinions of the Supreme Court in cases relative to the estoppel of a married woman to assert her title to real estate, without pointing out the distinction between them and the case in hand. It seems to us that this was an undesirable mode of instructing the jury as to the law applicable to the defense of estoppel set up in the present case. It would have been inadequate, because indefinite, if this had been all that the court said upon the subject. But it is to be noticed that

the court did not end its instructions here but proceeded immediately, and in that very connection, to affirm the defendants' first point which covered the ground, and was as strong a statement of the law as defendants were entitled to ask. The court evidently intended this to be the conclusion of the whole matter and we think it must have been so understood by the jury.

Whether the plaintiff was estopped to set up her title under the bill of sale, as against others than the defendants, was a collateral question, the determination of which in the affirmative would not affect the determination of the issue being tried. Therefore there was no error in refusing the point quoted in the sixth assignment.

Upon a review of the whole case we discover no error of sufficient gravity to warrant a reversal of the judgment.

All the assignments of error are overruled and the judgment is affirmed.